IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

UNIFIED SCHOOL DISTRICT NO. 259
SEDGWICK COUNTY, STATE OF KANSAS,

        Plaintiff,

v.                                            Case No. 25-1283-JWB

2 POINT CONSTRUCTION COMPANY, LLC
and THE HANOVER INSURANCE GROUP,

        Defendants.

**MEMORANDUM AND ORDER**

This matter is before the court on Plaintiff's motion to remand this case back to the District Court of Sedgwick County, Kansas, for lack of subject-matter jurisdiction under 28 U.S.C. § 1447(c). (Doc. 19.) The motion is fully briefed and ripe for decision. (Docs. 21, 22, 25.) For the reasons stated herein, Plaintiff's motion to remand is DENIED. Because Defendant 2 Point Construction Company, LLC was fraudulently joined, it is DISMISSED WITHOUT PREJUDICE. As a result of this ruling, Defendant 2 Point's motion to dismiss (Doc. 17) is DENIED AS MOOT.

I.      **Facts**

The following facts are taken from the allegations in the state court petition. (Doc. 1-1 at 2–7.) On July 14, 2025, Unified School District No. 259 ("USD 259" or "Plaintiff") sued The Hanover Insurance Company ("Hanover") and 2 Point Construction Company, LLC ("2 Point") (collectively "Defendants") in the Eighteenth Judicial District Court in Sedgwick County, Kansas.[1]

---

[1] *See Unified School District No. 259, Sedgwick County, State of Kansas v. 2 Point Construction Company, LLC et al.*, Case No. SG-2025-CV-001753.

1

The underlying dispute involves the construction of a swimming pool at South High School in Wichita, Kansas ("South Pool"). (*Id*. at 3.) In July 2010, Plaintiff and Vanum Construction Co., Inc. ("Vanum") entered into an agreement (the "Contract") for the construction of multiple swimming pools, including the South Pool. (*Id*. at 3, 8–15.) Hanover executed a performance bond (the "Bond") on Vanum's behalf to ensure completion of the Contract. (*Id*. at 3, 30–36.) Before Vanum completed construction of the South Pool, it defaulted under the Contract.

As a result of Vanum's default, Hanover, as performance bond surety, undertook to complete the South Pool by hiring 2 Point as a completion contractor. (*Id*. at 3–4.) In so doing, Hanover opted under Section 4.2 of the Bond "to perform and complete the Construction Contract itself, through its agents or through independent contractors." (*Id*. at 31.) At the time Hanover hired 2 Point, Hanover sent a letter to Plaintiff notifying them that "Hanover has undertaken to complete these projects through its completion contractor, 2Point Construction." (Doc. 19 at 2; *see also* Doc. 19-1.) Hanover went on to state that "this [letter] will confirm that Hanover agrees to complete construction of the bonded pool projects in accordance with the plans, specifications and other Vanum contract documents." (Doc. 19-1 at 1.)

Subsequently, 2 Point completed construction of the South Pool in 2013. (Doc. 1-1 at 4.) The South Pool began experiencing significant leaks in the spring of 2023, along with buckling and settling of the pool deck. (*Id*.) Plaintiff alleges that it was forced to stop using the South Pool and that a destructive inspection of the South Pool is necessary to determine the extent of damage due to the "several thousand" gallons of water leaks. (*Id*.) Plaintiff alleges the leaks are the result of inadequate workmanship, negligent installation, and deviations from industry standards. (*Id*.)

Accordingly, Plaintiff brought suit in state court to recover damages from Defendants. In the petition, Plaintiff alleged breach of contract ("Count I") and breach of implied warranty

("Count II") against Hanover and 2 Point.  Additionally, Plaintiff alleged negligence ("Count III") against 2 Point.  Hanover removed the case to federal court based on diversity jurisdiction.  28 U.S.C. § 1332(a)(1).  (Doc. 1.)  Although the parties are not completely diverse because both 2 Point and Plaintiff are Kansas citizens, Hanover asserted that 2 Point was fraudulently joined in this action.  (*Id*. ¶ 6.)  Plaintiff filed the instant motion to remand contesting the jurisdictional basis for removal.  This motion is governed by 28 U.S.C. § 1447(c), which mandates the remand of a removed case whenever "it appears that the district court lacks subject matter jurisdiction."  Plaintiff challenges allegations of fraudulent joinder made in the notice of removal to establish the existence of diversity jurisdiction.  (Doc. 19.)

To narrow the issue, Plaintiff, a unified school district established by the laws of the state of Kansas, is a citizen of the State of Kansas.  (Doc. 1 ¶ 1.)  *See* Kan. Stat. Ann. § 12-105a(a) (defining "Municipality" to include school districts); *Moor v. Alameda Cty.*, 411 U.S. 693, 721 (1973) (defining municipalities as citizens of the state for purposes of diversity jurisdiction).  Plaintiff has sued two defendants, one is 2 Point, a forfeited Kansas limited liability company whose sole member, Anthony Penny, is a citizen of the State of Kansas.  (Docs. 1-1 at 3; 9 at 1; 16 at 1.)  *See Elan Pharm., LLC v. Sexton*, 421 F. Supp. 3d 1119, 1129 (D. Kan. 2019) ("If the business is a limited liability company, its citizenship is determined by the citizenship of each one of its members.")  Finally, Defendants' allege that more than $75,000 is in controversy.  (Doc. 1 ¶ 2.)  Therefore, absent the application of fraudulent joinder, diversity jurisdiction would be destroyed due to the lack of complete diversity between Plaintiff and all Defendants.

## II.    Standard

A removing defendant may prove fraudulent joinder in one of two ways.  *Dutcher v. Matheson*, 733 F.3d 980, 988 (10th Cir. 2013).  The defendant may establish either (1) actual fraud

in the pleading of jurisdictional facts, or (2) inability of the plaintiff to establish a cause of action against the non-diverse party in state court. *Id.* Here, Defendants rely upon the second method. Defendants do not assert, whether explicitly or implicitly, that Plaintiff or its counsel has engaged in actual fraud. *See City of Neodesha, Kansas v. BP Corp. N. Am. Inc.*, 355 F.Supp.2d 1182, 1187 (D. Kan. 2005) ("Fraudulent joinder is a term of art, which does not reflect on the integrity of plaintiff or counsel, but rather exists regardless of the plaintiff's motives when the circumstances do not offer any other justifiable reason for joining the defendant."). With regard to establishing the second method, the Tenth Circuit has held:

> To prove their allegation of fraudulent joinder [the removing parties] must demonstrate that there is no possibility that [plaintiff] would be able to establish a cause of action against [the joined party] in state court. In evaluating fraudulent joinder claims, we must initially resolve all disputed questions of fact and all ambiguities in the controlling law in favor of the non-removing party. We are then to determine whether that party has any possibility of recovery against the party whose joinder is questioned.

*Montano v. Allstate Indemnity*, 2000 WL 525992, at *1 (10th Cir. April 14, 2000). The Tenth Circuit has described this standard as a "heavy burden." *Id*. Fraudulent joinder applies if Plaintiff cannot "establish a cause of action against the non-diverse party in state court." *Dutcher v. Matheson*, 733 F.3d 980, 988 (10th Cir. 2013). When assessing fraudulent joinder, "the court may pierce the pleadings, consider the entire record, and determine the basis of joinder by any means available." *Dodd v. Fawcett Publ'ns, Inc*., 329 F.2d 82, 85 (10th Cir. 1964). It is thus appropriate for the court to consider relevant matters in the record. Finally, under the fraudulent joinder doctrine, federal district courts disregard "for jurisdictional purposes, the citizenship of certain nondiverse defendants, assume jurisdiction over a case, dismiss the nondiverse defendants, and thereby retain jurisdiction." *Kan. State Univ. v. Prince*, 673 F. Supp. 2d 1287, 1294 (D. Kan. 2009) (quoting *Mayes v. Rapoport*, 198 F.3d 457, 461–62 (4th Cir. 1999)).

### III.    Analysis

This motion turns on whether 2 Point is a proper party to this case.  Plaintiff contends that 2 Point is a citizen of Kansas, thereby destroying diversity jurisdiction under 28 U.S.C. §§ 1332, 1441 and requiring remand.  Defendant argues that 2 Point has been fraudulently joined.  Plaintiff asserts three claims against 2 Point.  To avoid remand, there must be no "possibility that [Plaintiff could] establish" any claim in state court.  *Montano*, 2000 WL 525992 at *1.  The court will address each of the three claims Plaintiff brings against 2 Point.

Counts I and II allege breach of contract and breach of implied warranty, respectively. (Doc. 1-1 at 5.)  To state a claim for breach of contract under Kansas law, a plaintiff must show: (1) the existence of a contract; (2) sufficient consideration; (3) the plaintiff's performance or willingness to perform; (4) breach of the contract; and (5) damages caused by the breach. *Stechschulte v. Jennings*, 297 Kan. 2, 23, 298 P.3d 1083, 1098 (2013).  Accordingly, "[l]ack of privity bars breach of contract claims." <u>Land v. Midwest Off. Tech., Inc.</u>, 979 F. Supp. 1344, 1349 (D. Kan. 1997); *State ex rel. Stovall v. Reliance Ins. Co.*, 278 Kan. 777, 107 P.3d 1219, 1230 (Kan. 2005) (explaining that privity of contract is required before a party can bring an action based on contract).

Here, Hanover was the performance bond surety who, following Vanum's default, exercised its option under Section 4.2 of the Bond to complete the Contract "through its agents or through independent contractors."  (Doc. 1-1 at 31.)  In doing so, it was Hanover that retained 2 Point as its completion contractor, not Plaintiff.  The contractual relationship that existed was between Hanover and 2 Point; Plaintiff was never a party to any agreement with 2 Point.  Plaintiff's only relevant contractual counterparty was Hanover, under the Bond.  The communications Plaintiff relies upon confirm this arrangement: Hanover notified Plaintiff that it had "undertaken

to complete these projects through its completion contractor, 2Point Construction," and that Hanover agreed to complete the work in accordance with the Contract documents. (Doc. 19-1 at 1.) These statements reflect Hanover's obligations to Plaintiff, not 2 Point's. The fact that 2 Point performed physical construction work as Hanover's contractor does not create privity between 2 Point and Plaintiff. *See Land v. Midwest Off. Tech., Inc*., 979 F. Supp. 1344, 1349 (D. Kan. 1997) (dismissing breach of contract claim for lack of privity).

Plaintiff argues that it was a third-party beneficiary of a Contract between Hanover and 2 Point. (Docs. 25 at 2–3; *see also* 1-1 ¶ 24.) This argument is unavailing. As the Kansas Supreme Court made clear in *Stovall*, the fact that a subcontract incorporates or refers to the obligations of the prime contract does not make the project owner a third-party beneficiary of the subcontract. 278 Kan. at 793–94. The *Stovall* court rejected third-party beneficiary claims by a project owner against subcontractors even where the subcontracts expressly bound the subcontractors to the plans, specifications, and terms of the prime contract. *Id*. at 793–96. That situation is indistinguishable from the one presented here. Moreover, it is Plaintiff's burden to demonstrate the existence of a contract containing a provision that operates to its benefit. *Hartford Fire Ins. Co. v. Western Fire Ins. Co*., 226 Kan. 197, Syl. ¶ 5, 597 P.2d 622 (1979) ("Before the issue is reached of whether a third party may directly enforce a contract from which he would benefit, the third party must show the existence of some provision in the contract that operates to his benefit."). Plaintiff has failed to plead a term in the Contract demonstrating a clear intent to benefit Plaintiff. A conclusory allegation that Plaintiff "was a third-party beneficiary" is not sufficient. (Doc. 1-1 ¶ 24.) Because no privity exists between Plaintiff and 2 Point and the third-party beneficiary theory is unsupported by the record, there is no "possibility that [Plaintiff could] establish" Counts I and II. *Montano*, 2000 WL 525992 at *1.

6

The court will now address Count III, Plaintiff's negligence claim directed only at 2 Point. In Kansas, to bring a claim for negligence, Plaintiff must establish: (1) the defendant owed a duty to the plaintiff; (2) the duty was breached; (3) the breach was the proximate cause of the plaintiff's injury; and (4) damages. *Adams v. Bd. of Sedgwick Cnty. Comm'rs*, 289 Kan. 577, 585–86 (2009). With the record before it, the court concludes that Plaintiff cannot maintain a claim for negligence against 2 Point.

The court finds that 2 Point did not owe any relevant duty to Plaintiff that was breached when constructing the South Pool. As discussed, *supra*, 2 Point's duties ran in favor of Hanover under the Contract. Thus, Plaintiff must show some independent duty that 2 Point owed to Plaintiff, and which 2 Point breached, that was imposed by law separate and apart from the Contract.

The existence of a legal duty is a question of law. *Glassman v. Costello*, 267 Kan. 509, 521 (1999). Under Kansas law, "[a] breach of contract claim is the failure to perform a duty arising from a contract, and a tort claim is the violation of [a] duty imposed by law, independent of the contract." *David v. Hett*, 293 Kan. 679, 701, 270 P.3d 1102, 1114 (2011). The Kansas Supreme Court went on to say that a "critical element upon which an alleged tort must be based" is that an "independent duty was imposed." *Id*. Plaintiff's allegations fail to identify any duty imposed on 2 Point by law, independent of contract. Plaintiff alleges that 2 Point owed it a duty "to use reasonable care by performing its work in a skillful, careful, diligent, and workmanlike manner and in accordance with industry standards." (Doc. 1-1 ¶ 33.) Plaintiff further contends the breach occurred when 2 Point's construction fell below those industry standards. But this formulation describes the standard of performance 2 Point owed to Hanover under the Contract—not a duty imposed by law on 2 Point in favor of Plaintiff. Hanover hired 2 Point to complete the South Pool

as part of Hanover's own obligations to Plaintiff under the Bond.  Any duty 2 Point had to perform workmanlike construction ran to Hanover, its contracting party, not to Plaintiff.  Plaintiff has not alleged that it suffered personal injury or damage to other property as a result of 2 Point's work; its claimed harm is solely economic loss to the South Pool itself.  The letter Hanover sent Plaintiff stating that "Hanover has undertaken to complete these projects through its completion contractor, 2Point Construction," describes Hanover's exercise of its Bond obligations.  (Doc. 19 at 2; *see also* Doc. 19-1.)  It does not create a legal duty running directly from 2 Point to Plaintiff.  Because Plaintiff has identified no independent duty owed by 2 Point to Plaintiff beyond the obligations 2 Point owed Hanover under their contractual arrangement, there is no possibility Plaintiff can maintain a negligence action against 2 Point.[2]

Therefore, the court concludes that Plaintiff cannot establish Counts I–III against 2 Point.  Accordingly, the court ignores 2 Points' citizenship in its analysis of diversity of citizenship and, in so doing, finds that complete diversity of citizenship exists.  Because the court has determined that Plaintiff fraudulently joined 2 Point in this action, the court lacks jurisdiction over 2 Point to enter a judgment on the merits.  *See Brazell v. White*, 525 F. App'x 878, 884 (10th Cir. 2013).  Consequently, the court dismisses 2 Point from this case without prejudice.  *Id*. (citing *Albert v. Smith's Food & Drug Ctrs., Inc*., 356 F.3d 1242, 1249 (10th Cir. 2004)).

## IV.    Conclusion

---

[2] While the court finds Plaintiff cannot satisfy the required elements for Count III, the court briefly notes that Plaintiff's claim would nonetheless be barred by the economic loss doctrine.  *Louisburg Bldg. & Dev. Co. v. Albright*, 45 Kan. App. 2d 618, Syl. ¶ 10, 252 P.3d 597 (2011) ("When the actual damages that could be recovered under a tort claim are the same as those that could be recovered for breach of contract, the economic-loss doctrine prevents a party to a contract from bringing the tort claim.").  Here, Plaintiff appears only to allege economic losses—specifically, the cost to repair or replace the South Pool—arising from allegedly defective construction.  (Doc. 1-1 ¶¶ 12–14.)  The record is devoid of any alleged injury to Plaintiff beyond that of the pool itself, such as personal injury or damage to property.  The conduct Plaintiff alleges as negligence is precisely the same conduct it alleges constitutes a breach of the Contract.  Because the damages recoverable under Plaintiff's negligence theory would be identical to those recoverable under a contract theory, the economic loss doctrine bars Plaintiff's tort claim.

THEREFORE, Plaintiff's Motion to Remand (Doc. 19) is DENIED.  Because 2 Point was fraudulently joined, it is DISMISSED WITHOUT PREJUDICE.  As a result of this ruling, Defendant 2 Point's motion to dismiss (Doc. 17) is DENIED AS MOOT.

IT IS SO ORDERED.  Dated this 16th day of March, 2026.

_s/ John W. Broomes_____
JOHN W. BROOMES
CHIEF UNITED STATES DISTRICT JUDGE